Filed 9/28/21  In re M.S. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re M.S., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D078954 |
| Plaintiff and Respondent, | (Super. Ct. No. SJ12981D) |
| v. | |
| L.F., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge.  Affirmed.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Lonnie J. Eldridge, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

L.F. (Mother) appeals an order denying her Welfare and Institutions Code,[1] section 388 petition to return her daughter M.S. to her care based on a change in circumstances. The order was entered at the same hearing as the juvenile court's order terminating parental rights and finding M.S. adoptable at her selection and implementation hearing. (§ 366.26.) We conclude that the juvenile court did not err in making its ruling and therefore affirm.

FACTUAL AND PROCEDURAL BACKGROUND[2]

In September 2016, Mother gave birth to M.S. while she was incarcerated. The San Diego County Health and Human Services Agency (the Agency) petitioned the juvenile court after M.S. was left with no caregiver, but the court dismissed the petition in January 2017 when Mother was released from custody. M.S.'s biological father (Father) was identified, but he was then deported to Mexico.[3] Mother accepted voluntary services and was reunited with M.S.

In July 2018, the Agency again petitioned the juvenile court under section 300, subdivision (b), on behalf of one-year-old M.S. The Agency alleged that there was a substantial risk that M.S. would suffer serious physical harm or illness due to Mother's erratic behavior when under the influence of narcotics while caring for M.S.

---

[1]  Further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2]  "In accord with the usual rules on appeal, we state the facts in the manner most favorable to the dependency court's order." (*In re Janee W.* (2006) 140 Cal.App.4th 1444, 1448, fn. 1.)

[3]  Father is not a party to this appeal and the proceedings as they relate to him are not discussed in the opinion.

As discussed in the detention report, the petition arose from an incident in which the police responded to a call after M.S. choked on food and could not breathe. Mother and M.S. were transported to the hospital, where Mother began to act erratically while holding M.S. Mother admitted that she had been using drugs and drinking. Mother was arrested and M.S. was taken to the Polinsky Children's Center when no relatives could be located.

A social worker later learned that Mother had been evicted from her apartment several months earlier. A neighbor reported that Mother and M.S. had been living on the street. M.S. had been diagnosed with a heart defect and Mother had failed to attend multiple medical appointments.

Based on this information, the juvenile court found that the Agency had made an adequate showing that M.S. was a person described by section 300, subdivision (b), and ordered her detained in out-of-home care.

In its initial jurisdiction report filed in August 2018, the Agency noted that M.S. was currently living at a licensed foster home. Mother denied she had been using drugs on the day that M.S. was detained at the hospital and denied she was currently using drugs. In an addendum report, the Agency noted that Mother had agreed to drug testing and tested negative. Mother's probation officer was also able to vouch for Mother's repeated negative drug test results. However, Mother had failed to begin drug treatment.

At the jurisdiction and disposition hearing in September 2018, the juvenile court sustained the allegations of the petition under section 300, subdivision (b). The court ordered reunification services for parents and placed M.S. in a foster home.

In advance of the six-month review hearing, the Agency reported that Mother had seen her appointed therapist only once and was struggling due to the sudden death of her fiancé. Mother had not been drug tested and was not

participating in a substance abuse program. Mother subsequently entered an inpatient program where she began to successfully participate in multiple services. However, by June 2019, Mother had been discharged from the inpatient program after repeatedly returning late at night following court hearings. Thereafter, the Agency was unable to locate Mother. At the six-month review hearing, the court found Mother's progress in reunification services "has been minimal," but ordered reunification services to continue for another six months while M.S. continued in her current placement.

In its next review report, the Agency recommended that reunification services be terminated and the matter be set for a section 366.26 hearing. The Agency was unaware of Mother's whereabouts despite best efforts to locate her and she had not visited M.S. for several months. Later, the Agency found Mother, who was incarcerated and being held at a security level at which she was not permitted to participate in services. Mother told the social worker that she expected to be released soon into another inpatient program.

At a contested 12-month review hearing in October 2019, the juvenile court terminated reunification services and set the matter for a selection and implementation hearing pursuant to section 366.26.

Thereafter, the Agency recommended that the court terminate parental rights and find M.S. to be adoptable. In an assessment report, the social worker noted that Mother was released from custody in November 2019 and entered an inpatient program. Her release allowed Mother to resume visits with M.S. Mother completed her inpatient program and informed the social worker that she was transitioning to a sober living facility. In an addendum report, the Agency noted that Mother had completed her inpatient program and had enrolled in mental health services and individual therapy.

Approximately one year later, in September 2020, Mother filed a petition pursuant to section 388 asking the court to change M.S.'s placement to return her to Mother's care. Mother stated she had made "enormous progress" in services in the past year, had remained sober for approximately 10 months, and was continuing to participate in services without any help from the Agency following the court's termination of reunification services. In response, the Agency asked for a continuance, which the juvenile court granted, to allow time to assess Mother's progress. At an interim hearing, the juvenile court found that Mother had established a prima facie showing of changed circumstances and set the matter for an evidentiary hearing to coincide with the section 366.26 hearing.

In an addendum report, the Agency noted that it had received reports of Mother drinking and driving while caring for her new infant son and explained she had provided conflicting reports regarding where she was living. Mother's sobriety sponsor also informed the social worker that she stopped working with Mother because she believed Mother was not being honest and forthcoming. In a final addendum report filed immediately before the hearing, the Agency noted that Mother had dropped out of contact with the Agency for several weeks. Mother's probation officer was also unable to locate Mother and told the social worker that Mother had not been compliant with her probation requirements. The Agency had received subsequent reports that Mother was neglecting her infant son and was suspected to be using methamphetamine again. After a warrant was issued for her arrest, Mother was located and informed the social worker that she was entering a new sober living facility. The Agency continued to recommend that parental rights be terminated and that the court select a permanent plan of adoption.

Mother testified at the hearing on both her section 388 petition and the section 366.26 proceedings in April 2021. She testified that she was currently living in a sober living home with her son. She stated that she had been sober since August 2019. Mother detailed the services she had completed and continued to attend since the court terminated reunification services.

The court first considered Mother's section 388 petition. The juvenile court found Mother had not established "a true change of circumstances that warrants placement in the best interest of the minor." The court characterized Mother's circumstances as "a little roller coaster. There's a stable period. And then [Mother] falls off in that stability. And then she comes up to a place where we're hoping she will become stable again." The court concluded that given the length of these proceedings, M.S. "deserves the stability that a sober, stable, and caring caregiver could give to this child."

Turning to the section 366.26 issues, the juvenile court concluded that M.S. was generally and specifically adoptable and that none of the statutory exceptions to termination of parental rights existed. Accordingly, the court terminated parental rights.

Mother appealed.

DISCUSSION

On appeal, Mother challenges only the juvenile court's order denying her petition filed pursuant to section 388 and does not challenge the order terminating parental rights. Section 388 provides an "escape mechanism" that allows a parent to petition the juvenile court to change, modify, or set aside a previous order on grounds of changed circumstances or new evidence. The petitioning parent bears the burden of showing by a preponderance of the evidence that there is new evidence or changed circumstances that make

a change in placement in the best interests of the child. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) "After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability . . . .' [Citation] A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, the best interests of the child." (*Ibid.*)

"In considering whether the petitioner has made the requisite showing, the juvenile court may consider the entire factual and procedural history of the case. [Citation.] The court may consider factors such as the seriousness of the reason leading to the child's removal, the reason the problem was not resolved, the passage of time since the child's removal, the relative strength of the bonds with the child, the nature of the change of circumstance, and the reason the change was not made sooner. [Citation.] In assessing the best interests of the child, 'a primary consideration . . . is the goal of assuring stability and continuity.' " (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 616 (*Mickel O.*).)

As Mother acknowledges, we review the juvenile court's decision under the abuse of discretion standard of review. (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1158; *In re Angel B.* (2002) 97 Cal.App.4th 454, 460 (*Angel B.*).) A proper exercise of discretion is " 'not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. . . . to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice.' [Citations.]" (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1066.) Exercises of discretion must be " 'grounded in reasoned judgment and guided

by legal principles and policies appropriate to the particular matter at issue.' [Citations.]" (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 15.) Thus, although the abuse of discretion standard is deferential, "it is not empty." (*People v. Williams* (1998) 17 Cal.4th 148, 162.) The standard "asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts. [Citations.]" (*Ibid.*)

Mother contends that her recent progress, as evidenced by her success in remaining out of custody, maintaining her sobriety, participating in services, caring for her infant son, and accepting responsibility, constituted a change in circumstances warranting reconsideration of M.S.'s placement.

The Agency does not dispute that Mother made some progress after reunification services were terminated. However, as the juvenile court found, Mother's recent progress was a "roller coaster" and mirrored her earlier periods of stability that regressed as Mother gained independence. Mother bore the burden of showing "*changed*, not changing, circumstances." (*Mickel O.*, *supra*, 197 Cal.App.4th at p. 615.) She did not meet this burden.

Mother was able to maintain her sobriety while incarcerated and while participating in inpatient and outpatient programs. However, beginning in October 2020, Mother began to struggle. Mother stated she was unable to visit M.S. in person due to illness, but also did not take advantage of the social worker's repeated offers to facilitate video visits. Mother also claimed she was unable to complete drug tests due to her illness, which prevented the Agency from determining whether Mother was maintaining her sobriety despite reports that Mother was drinking. In November 2020, Mother had to change her housing. Thereafter, Mother ceased all communications with the Agency for a significant period of time in December 2020 and January 2021. When questioned about her living situation, Mother often provided

8

inconsistent information. Mother's sobriety sponsor told the Agency that she stopped working with Mother "because she cannot sponsor a person [who] hides things from her and lies to her." From October 2020 until late January 2021, Mother did not complete any drug tests.

Beginning in late January 2021, Mother began another period where her whereabouts were unknown and she had no contact with the Agency, M.S.'s caregiver, or her probation officer. In February 2021, a warrant was issued for the arrest of Mother for not complying with the conditions of her probation. During this same time, the Agency received reports that Mother was using drugs again. The Agency learned that Mother had moved again and could not locate her.

In March 2021, Mother contacted the Agency to state that she was moving into a sober living facility. Mother then began to maintain contact with the Agency and regular visits. This participation in a new program appeared to mark another change in Mother's progress, but was consistent with her prior pattern of stability followed by lapses. Given Mother's past difficulties, the juvenile court could reasonably conclude that Mother's circumstances were, at best, changing.

Although other evidence in the record and Mother's testimony show some progress, the juvenile court did not abuse its discretion on relying on different evidence to find Mother's instability demonstrated that her circumstances had *not* changed. For this reason, the court could also reasonably conclude that it was not in M.S.'s best interests to be placed with Mother. Although M.S.'s placement had recently changed, it was still more stable than Mother's circumstances. Accordingly, the court's denial of Mother's section 388 petition did not constitute an abuse of discretion.

## DISPOSITION

The order is affirmed.

O'ROURKE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

DATO, J.